**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

STACY M.,

                Plaintiff,

      v.                                                          3:17-CV-753
                                                                            (DJS)

NANCY A. BERRYHILL,
*Acting Commissioner of Social Security*,

                Defendant.

**APPEARANCES:**                           **OF COUNSEL:**

LACHMAN & GORTON                PETER A. GORTON, ESQ.
Counsel for Plaintiff
300 South State Street, Suite 420
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION    ELIZABETH ROTHSTEIN, ESQ.
Office of Regional General Counsel         Special Assistant U.S. Attorney
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

Currently before the Court, in this Social Security action filed by Stacy M. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11 & 16. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion for Judgment on the Pleadings is denied, and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1974, and therefore she was 33 years old at the alleged onset date of her disability. Dkt. No. 8, Admin. Tr. ("Tr."), pp. 11 & 18. Plaintiff completed a high school education, with one year of college. Tr. at p. 18 & 43. Plaintiff has past work, mostly as a teller and a manager at a bank. Tr. at pp. 18 & 44. Generally, Plaintiff alleges disability due to degenerative disc disease, perineal nerve damage, spinal fusions, right knee issues, chronic joint pain, migraines, thyroid, and anxiety/depression. Tr. at pp. 13 & 214.

### B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits, and protectively filed for suplemental security income, in June of 2014. Tr. at pp. 11 & 197. Plaintiff's applications were initially denied on August 20, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at p. 35. Plaintiff appeared at a hearing before ALJ Marie Greener on December 23, 2015. Tr. at pp. 37-56. On March 7, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 8-23. On June 8, 2017, the Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-7.

## C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law. First, it was determined that Plaintiff met the insured status requirement through March 31, 2014. Tr. at p. 13. Next, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 8, 2008, the alleged onset date. *Id*. Third, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease and a history of peroneal nerve damage. *Id.* The ALJ also found that Plaintiff has the non-severe impairment of headaches, anxiety, and depression. *Id.* In particular, the ALJ noted that claimant's medically determinable mental impairment of anxiety/depression did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities as set forth in the "paragraph B" criteria, and was therefore non-severe. Tr. at pp. 13-14. Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at p. 14. Specifically, the ALJ considered Listing 1.04A (disorders of the spine). *Id.* Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Tr. at p. 15. Seventh, the ALJ found that Plaintiff is capable of performing past relevant work as a Bank Manager, Teller and Teller Manager. Tr. at p. 18. Alternatively, the ALJ found that there are jobs that exist in significant numbers

in the national economy that Plaintiff can perform. Tr. at p. 19. The ALJ therefore concluded that Plaintiff is not disabled. *Id.*

## D. The Parties' Positions

Plaintiff raises several issues for consideration by the Court. *See generally* Dkt. No. 11, Pl.'s Mem. of Law. Plaintiff contends that the ALJ erred when she failed to find that Plaintiff had a severe psychiatric impairment and failed to include related limitations in the RFC. *Id.* at pp. 20-23. Next, Plaintiff argues that the ALJ's RFC, which stated that she could perform all levels of sedentary work, was erroneous in that it was contradicted by the medical opinions in the record, and was the result of the ALJ improperly weighing those opinions and substituting her own opinion in the place and stead of those medical experts. *Id.* at pp.10-20. Plaintiff argues that she cannot perform her past work as a bank manager, and therefore the ALJ's conclusion that she could should be reversed. *Id.* at pp. 23-24. Finally, Plaintiff argues that the ALJ improperly relied upon the Grids and, instead, should have consulted with a vocational expert. *Id.* at pp. 24-25.

In response, Defendant takes the position that the ALJ correctly assessed the severity of Plaintiff's mental impairment. Dkt. No. 16, Def.'s Mem. of Law at pp. 4-10. Defendant also asserts that the ALJ properly evaluated the medical experts and that there is substantial evidence for the assessed RFC. *Id.* at pp.10-20. Finally, Defendant contends that substantial evidence supports the ALJ's step four and alternative step five findings. *Id.* at pp. 20-21.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by

substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant

> does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. Whether the ALJ Properly Evaluated Plaintiff's Mental Impairment at Step Two

In cases where a mental impairment is present, the ALJ is required to apply a special psychiatric review technique when assessing its severity and impact on the claimant's work-related functioning. *Lewis v. Colvin*, 122 F. Supp. 3d 1, 6 (N.D.N.Y. 2015); 20 C.F.R. §§ 404.1520a & 416.920a (2015). The regulations indicate that the technique requires the ALJ to first evaluate the pertinent symptoms, signs, and laboratory findings to determine whether there is a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1) & 416.920a(b)(1). Second, the ALJ must rate the degree of functional limitation resulting from those impairments by considering all relevant and available clinical signs and laboratory findings, the effects of the claimant's symptoms, and how the claimant's functioning might be affected by factors including chronic mental disorders, structured settings, medications, and other treatment. 20 C.F.R. §§ 404.1520a(b)(2) & 416.920a(b)(2).

In rating the claimant's mental impairment, the ALJ must consider multiple issues and all relevant evidence, assessing and rating the claimant's functioning in the four broad areas of activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation; in doing so, the ALJ should consider the extent to which the claimant's impairments interfere with her ability to function independently, appropriately, and effectively on a sustained basis. 20 C.F.R. §§ 404.1520a(c)(2)-(3) & 416.920a(c)(2)-(3). After rating the claimant's mental impairments accordingly, the ALJ must determine whether the claimant's mental impairments are severe. Pursuant to the Regulations, a finding of mild or less for each factor supports a finding that the impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1) & 416.920(d)(1). It is the plaintiff's burden to show that this mental impairment was both medically determinable and severe. *Marthens v. Colvin*, 2016 WL 5369478, at *6 (N.D.N.Y. Sept. 22, 2016).

Plaintiff contends that the ALJ's determination was not supported by evidence in the record, and that it was error for the ALJ to make the determination as to the severity of Plaintiff's impairments without a supporting medical opinion. Pl.'s Mem. of Law at pp. 20-23. The Court finds Plaintiff's contentions persuasive. The ALJ assessed Plaintiff's limitations in each of the four categories, but provided very little reasoning, noting that "the claimant, at intervals throughout the record, received medication from various providers to manage complaints associated with these impairments. However, the record reflects that these impairments are routinely referred to as 'mild' throughout the record by both the claimant and her medical providers." Tr. at p. 14. Here, the ALJ's limited rationale appears

to misstate the record. The ALJ does not cite to the locations where the impairments are referred to as "mild," and Defendant directs the Court to one such citation. Tr. at p. 595. However, the impairments are more frequently described as "uncontrolled," providing that functioning is "extremely difficult," and describing the various impacts on functioning that are not "mild." Tr. at pp. 422, 431, 547, 556, 574, & 600. The explained basis for the ALJ's finding therefore appears to be error, and the Court cannot otherwise assess the validity of the determination as there is no further explanation. As such, the ALJ's determination at Step Two was not supported by substantial evidence.

"The omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination." *Pascal T. v. Berryhill*, 2019 WL 316009, at *7 (N.D.N.Y. Jan. 24, 2019) (citing cases); *see also Margarita S. v. Comm'r of Soc. Sec.*, 2019 WL 266678, at *5 (N.D.N.Y. Jan. 18, 2019); *Terry M. v. Comm'r of Soc. Sec.*, 2018 WL 6807218, at *5 (N.D.N.Y. Dec. 27, 2018). In this case, however, the ALJ does not proceed to discuss Plaintiff's mental impairments or any limitations therefrom in the rest of her determination. As such, the error is not harmless, and is a basis for remand.

### B. Whether the ALJ Properly Determined the RFC

Residual functional capacity is defined as "'what an individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198

F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. 20 C.F.R. § 404.1513a; *see also Frey ex rel. A.O. v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). In addition, "the ALJ is free to resolve conflicts in the evidence and choose among properly submitted medical opinions." *Brown v. Colvin*, 2013 WL 3384172, at *5 (N.D.N.Y.

July 8, 2013).

The ALJ found that Plaintiff had the RFC "to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." Tr. at p. 15. Sedentary work is defined as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out the job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567 & 416.967(a).

### 1. Review of Medical Record

In considering the arguments made by counsel regarding the propriety of the RFC and the hearing officer's weighing of medical evidence, the Court must briefly review Plaintiff's medical history regarding her back. Plaintiff had a history of left-sided sciatica and severe pain flares. Tr. at p. 279. Her first back surgery was in 1999. Tr. at p. 523. In December 2001 she underwent an L5 laminotomy diskectomy  Tr. at pp. 276 & 281. At that time she was treated by Dr. Gaylon. *Id.* Post-surgery Plaintiff had physical therapy, limitations, and continued complaints of pain. Tr. at pp. 272-276. Plaintiff indicates that the pain never went away. Tr. at p. 523. Nevertheless, Plaintiff continued to perform her usual job duties.[2] Tr. at p. 279.

---

[2] Plaintiff was employed as a bank teller, and then as the bank manager. She earned a salary of approximately $60,000 for 2006 and 2007, and $50,000 for the portion of the year she worked in 2008. Tr. at p. 208. She stopped working in August 2008.

In 2005 the Plaintiff underwent gastric bypass surgery, and as a result lost approximately 100 pounds. Tr. at p. 523. However, she maintains that this worsened her back issues. *Id*.

In 2006 Plaintiff was diagnosed with a compressed peroneal nerve which caused pain radiating down to the left leg. Tr. at pp. 523 & 317. In September 2006, Plaintiff underwent a surgery for decompression of the peroneal nerve, which was performed by Dr. Gaylon. Tr. at pp. 289-291, 523.

In January 2007, Plaintiff had increasing pain and, in an effort to deal with that pain, underwent facet block injections. Tr. at pp. 345-348. Plaintiff maintained that she had increasing pain in August 2007, Tr. at p. 337, and ultimately underwent another back surgery in August 2008. Tr. at pp. 283 & 296. That surgery consisted of an L4-5 discectomy and left L5-S1 laminectomy. *Id.* A post-surgical MRI noted intervertebral disc height loss with moderate stenosis. Tr. at p. 297.

Plaintiff was treated again in November 2008.[3] At this point in time Plaintiff had lost her job at the bank. Tr. at p. 358. The ALJ relies upon this November note in her decision, which indicates that Plaintiff's gait is "quite steady" and that there was "mild spasm" and a "a decent range of motion." Tr. at pp. 16 & 358. For the sake of completeness, however, this particular medical record also provides that the Plaintiff "has numbness and tingling and that gets worse if she has been standing or sitting greater than 10 minutes without change in

---

[3] The ALJ references this note as being from November 2, 2008, but the correct date is November 12, 2008.

position," and regarding her duties in the bank "I think her major limitation to return to work is her inability to sit for extended periods greater than 10 minutes or stand." Tr. at p. 358. This treatment note was signed by Joseph Garrehy, R.P.A.-C. for Dr. Gaylon.

In 2009, Plaintiff's physician notes low back pain radiating down to Plaintiff's left leg, and the impression is recurrent radiculopathy associated with chronic back pain. Tr. at pp. 316 & 322. Pain is rated 8 out of 10. Tr. at p. 322. Dr. Gaylon noted in early 2009 that Plaintiff "is really not able to function at her usual work scenario, as standing clearly exacerbates symptoms," but Dr. Gaylon held out hope that she may be able to rejoin the workforce. Tr. at p. 357.

In March 2010, Plaintiff discussed fusion surgery in light of her continued pain and her degenerative changes at L4-5 and L5-S1. Tr. at p. 354. Dr. Gaylon indicated that Plaintiff was totally disabled given her pain, deficits, and present limitations. Tr. at p. 356.

Plaintiff's final surgery, for a back fusion, took place in March 2013. Tr. at p. 523. The post-surgery MRI disclosed lumbar syndrome with intermittent radiculopathy secondary to disc degeneration and facet arthropathy. Tr. at pp. 376 & 389. Post-surgery, the doctor indicated that Plaintiff could do a certain amount of walking, but she has muscle spasms and difficulty sleeping. Tr. at p. 389.

### 2. *Consideration of the Opinions of Dr. Glosenger and Dr. Figueroa*

Dr. Glosenger prepared a medical source statement indicating that as a result of Plaintiff's condition, she could sit or stand for zero hours a day, and it would be necessary for her to change positions between standing and sitting every one minute. Tr. at pp. 17 &

592. Further, the doctor indicated that the Plaintiff would be off task more than 33% of the time. Tr. at p. 591. The ALJ afforded the opinion of Dr. Glosenger, Plaintiff's treating physician, "little weight." Tr. at p. 17. Plaintiff contends that this was error because, as a treating physician, his opinions are entitled to controlling weight, or at least greater deference than the ALJ afforded here, unless the ALJ performed a specific analysis of various factors, which Plaintiff contends was not properly done in this case. *See* Pl.'s Mem. of Law at pp. 10-15. Having reviewed the record, the Court concludes that the ALJ properly considered the opinion of Dr. Glosenger and this claim is no basis for relief.

Under the treating physician rule "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal quotations and alterations omitted). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.*

After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). However,

"[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)). "Although an explicit and 'slavish recitation of each and every factor' is not required, 'the ALJ's reasoning and adherence to the regulation [must be] clear.'" *Colvin on behalf of G.R.K. v. Colvin*, 2017 WL 1167292, at *6 (N.D.N.Y. Mar. 28, 2017) (quoting *Atwater v. Astrue*, 512 Fed. Appx. at 70) (collecting cases). The ALJ must give "good reasons for not crediting the opinion." *Greek v. Colvin*, 802 F.3d at 375 (internal quotation marks omitted) (quoting *Burgess v. Astrue*, 537 F.3d at 129-30).

At the outset, the Court notes that "[i]t is the province of the ALJ, not the reviewing court, to weigh and evaluate evidence." *Gatien v. Berryhill*, 2017 WL 6397734, at *6 (E.D.N.Y. Dec. 13, 2017). Having reviewed the record, it is clear that the record supports the ALJ's conclusion that the opinions of Dr. Glosenger, as contained in the medical source statement including the inability to sit or stand more than "0" hours per day, and the need to switch position every 1 minute, and that Plaintiff would be off task a third of the time, were not fully supported by the complete medical record.

The ALJ provided the requisite analysis in rejecting Dr. Glosenger's opinion. She noted the period of time that Dr. Glosenger treated Plaintiff, from February 2015 through December 2015; she described that the medical evidence of record is inconsistent with the opinion; in addition, she noted that the doctor dates the assessment back to fifteen years ago,

when the claimant was working, and fourteen years prior to when he began treating her. Tr. at p. 17. Here, the ALJ gave "good reasons" for discrediting this opinion, and her "adherence to the Regulations is clear." *See Greek v. Colvin*, 802 F.3d at 375; *Blinkovitch v. Comm'r of Soc. Sec.*, 2017 WL 782979, at *4. The ALJ conducted a detailed analysis of the record and "[t]he court will not second guess this well-founded assessment." *Sorensen v. Comm'r of Soc. Sec.*, 2010 WL 60321, at *5 (N.D.N.Y. Jan. 7, 2010). As such, the ALJ's analysis of Plaintiff's treating physician's opinion is not cause for remand.

The other opinion considered by the ALJ was that of the consultative examiner, Dr. Rita Figueroa, an orthopedic expert. Tr. at pp. 523-528. Dr. Figueroa noted a lengthy history of chronic back pain with three back surgeries, as well as knee issues as a result of six arthroscopies. Tr. at pp. 523-524. As to the back pain, it was noted to range at a level from 8 to 10, with an increase in stabbing pain with movement. Tr. at p. 523. Dr. Figueroa issued a diagnosis of chronic low back pain with herniated disc. Tr. at p. 526. She further opined that the claimant had marked limitations to lifting, carrying, bending, and twisting, due to her back conditions, and marked limitations in squatting and kneeling due to her knee conditions. Tr. at p. 526. The ALJ noted these findings, but also concentrated on certain specific findings in the examination, particularly the fact that Plaintiff was not in acute distress during the examination, straight leg raising was negative, the lack of atrophy, and the fact that the Plaintiff was able to get on and off the examining table without assistance. Tr. at pp. 17-18. She afforded Dr. Figueroa's opinion "great weight" because she "conducted a complete physical examination, assessing all of the claimant's physical complaints and

arrived at a conclusion consistent with the medical evidence of record as well as with her own articulated examination findings." Tr. at p. 18. The ALJ's conclusion to assign this opinion significant weight was therefore well reasoned and the Court will not reweigh the evidence. *See Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (citing *Carroll v. Sec. of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)) ("It is not the function of the reviewing Court to reweigh the evidence.").

Based upon the consulting examiner's findings and opinions, the ALJ concluded the claimant can perform sedentary work without restriction. Tr. at p. 18. Dr. Figueroa opined that Plaintiff had the following limitations: "[m]arked[] limitations to lifting, carrying, bending, and twisting due to the chronic low back pain and herniated disc" and "[m]arked limitation to squatting and kneeling due to the right knee pain and arthritis." Tr. at p. 526. Plaintiff contends that the assigned RFC does not account for the postural limitations that were opined by Dr. Figueroa. Pl.'s Mem. of Law at p. 18. The Court agrees. By giving great weight to Dr. Figueroa's opinion, the ALJ presumably adopted the postural limitations; however, she did not include any related limitations in the RFC or explain the basis for not doing so. As such, the Court is unable to determine whether the RFC supports Plaintiff's limitations.

In particular, the ALJ did not identify the effect of the marked limitations on Plaintiff's ability to perform those postural functions. "A hearing officer properly must incorporate non-exertional impairments—which include 'difficulty performing the manipulative or postural functions of some work' . . . into his RFC determination, and failure

to do so generally warrants a remand." *Rowe v. Colvin*, 166 F. Supp. 3d 234, 239-40 (N.D.N.Y. 2016) (citations omitted). The failure to do so here is problematic because presumably a "marked" limitation would translate to significant interferences with performing those activities. If Plaintiff is unable to, for example, bend at least occasionally, the occupational base would be significantly eroded. *See Molina v. Barnhart*, 2005 WL 2035959, at *8 (S.D.N.Y. Aug, 17, 2005) (citing SSR 83-14, at *4 & SSR 96-9, at *8). As such, additional explanation is needed. *See Rowe v. Colvin*, 166 F. Supp. 3d at 239-40 (remanding for the ALJ to "sort out the apparent contradiction" where ALJ adopted findings including marked limitations in bending and neck motion, reaching, pushing, pulling, lifting, and carrying, and assigned the RFC of the full range of sedentary work); *Merkley v. Comm'r of Soc Sec.*, 2017 WL 4512448, at *8 (N.D.N.Y. Oct. 10, 2017) (similar); *see also Rockwood v. Astrue*, 614 F. Supp. 2d 252, 281 (N.D.N.Y. 2009) ("[T]he Court cannot determine whether the ALJ incorrectly overlooked some of Plaintiff's limitations"). As such, the Court finds that the matter should be remanded.[4]

### C. Steps Four and Five

Plaintiff contends that the ALJ committed error by finding that Plaintiff could perform her past work, as well as by improperly relying on the Grids and failing to consult with a vocational expert. Pl.'s Mem. of Law at pp. 23-25. On remand, the ALJ's Step Two and Three analyses may alter these items. As such, the ALJ should consider these points on

---

[4] Plaintiff also contends that the ALJ failed to assess the opinion of Dr. Galyon, and improperly assessed Plaintiff's ability to sit and stand and the need for a sit/stand option, as well as her ability to work consistently. These items may also be considered on remand.

remand.[5]

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED,** that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED,** that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff benefits is **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Dated: March 29, 2019
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[5] Plaintiff also contends that the ALJ "makes unsubstantiated conclusions and findings." Pl.'s Mem. of Law at p. 25. In light of the remand, the ALJ should consider these items in performing his or her analysis.